DECISION
{¶ 1} Relator, Kingsley B. Briggs, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying his application for permanent total disability compensation and to find that relator is entitled to permanent total disability compensation.
{¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In the decision, the magistrate determined that the commission did not abuse its discretion in denying relator permanent total disability compensation. Specifically, the magistrate concluded (1) the objective findings made by Drs. Yarab and Martin are not inconsistent with the definition of light work and are not inconsistent with both the objective and subjective findings of Dr. Vargo, and (2) the staff hearing officer did not fail to adequately address relator's age in reaching his decision that relator could perform some sustained remunerative employment. Accordingly, the magistrate determined the requested writ should be denied.
{¶ 3} Relator has filed an objection to the magistrate's conclusions of law, contending the magistrate incorrectly determined the commission did not abuse its discretion in denying relator permanent total disability compensation. Relator's objection reargues those matters adequately addressed in the magistrate's decision. Specifically, relator continues to assert the reports of Drs. Yarab and Martin are internally inconsistent. As the magistrate properly noted, the limitations the doctors impose on relator's work activity are consistent with light work.
{¶ 4} Moreover, although relator's objection challenges the staff hearing officer's conclusion that relator has transferable skills, the staff hearing officer based the conclusion on relator's working in a skilled position which required training. From that, the staff hearing officer concluded relator could be retrained to perform other occupations in entry level sedentary or light work. The staff hearing officer did not abuse its discretion in so concluding. Accordingly, relator's objection is overruled.
{¶ 5} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objection overruled; writ denied.
BOWMAN and GLASSER, JJ., concur.
GLASSER, J., retired, of the Sixth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN MANDAMUS
{¶ 6} Relator, Kingsley B. Briggs, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation and ordering the commission to find that relator is entitled to PTD compensation.
Findings of Fact:
{¶ 7} 1. Relator has sustained two work-related injuries and his claims have been allowed as follows: "[(1) Claim #]L217100-22 lumbar sprain. (2) Claim #L249344-22 allowed for: contusion right knee; patellofemoral contusion; aggravation of pre-existing osteoarthritis of the right knee; adjustment disorder with mixed anxiety and depressed mood."
{¶ 8} 2. Relator last worked in October 1996, and underwent a total knee replacement in 1997.
{¶ 9} 3. On November 15, 2000, relator filed an application for PTD compensation supported by the April 4, 2000 report of John J. Vargo, D.O., who, after providing his objective findings, assessed a 30 percent whole person impairment and concluded as follows:
{¶ 10} "This injured worker is left in somewhat of a quandary. He is unable to kneel. He has problems bending. He cannot climb. He cannot push, pull, lift or carry more than ten pounds maximum. He cannot work on unlevel surfaces. Most equipment he cannot run because he cannot do repetitive motion with his extremities. Based upon this, it is my medical opinion and is within a degree of medical certainty, that the patient is permanently and totally disabled due to the allowed conditions in these claims."
{¶ 11} 4. Relator also attached the January 5, 1999 psychological report prepared by Michael A. Heilman, Ph.D., who assessed a 15 percent psychiatric impairment, concluded that relator could not return to his former position of employment, but that he could perform some other sustained remunerative employment. Dr. Heilman concluded as follows:
{¶ 12} "Typically, an adjustment disorder does not in itself, prevent an individual from re-entering the work force. In fact, if a job could be found to meet the claimant's physical limitations, this would indeed be very therapeutic. However, with the claimant's current physical limitations, and his lack of acceptance of these limitations, his emotional reaction to his inability to perform any sustained remunerative employment at his former levels of functioning would only serve to exacerbate his current psychological symptoms. If alter-native employment within the claimant's limitations could be found, his psychological condition alone would not prevent him from performing sustained remunerative employment."
{¶ 13} 5. Relator was examined with regard to his physical conditions by Dr. Ronald M. Yarab, who issued a report dated April 5, 2001. Dr. Yarab noted relator's complaints and his objective findings. Dr. Yarab concluded that relator had reached maximum medical improvement, assessed a five percent permanent impairment for his lower back condition, noting that it was a minor impairment, assessed a 15 percent permanent impairment for relator's knee condition, for a 19 percent whole person impairment. Dr. Yarab concluded that relator was capable of performing sustained remunerative employment in the light work category, which was defined on his form, as follows:
{¶ 14} "Light work means exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible."
{¶ 15} 6. Relator was also examined by Dr. Paul C. Martin, who issued a report dated February 9, 2001. Dr. Martin noted relator's complaints and concluded that relator did not have any residual problems relating to the allowed condition of "lumbar strain." Instead, Dr. Martin attributed relator's back problems to the nonallowed, nonrelated degenerative arthritis. Dr. Martin noted that relator's knee condition does have some impairment although relator had a fairly good result following knee replacement surgery. Dr. Martin concluded that relator could not return to his former position of employment, but that he would not be precluded from performing some sustained remunerative employment. Dr. Martin opined that relator can work in an environment in which he would not be required to kneel, squat, climb ladders, lift more than 20 pounds, or stand or walk for prolonged periods of time. Relator was examined for his psychological condition by Dr. Robert L. Byrnes, who issued a report dated April 4, 2001. Dr. Byrnes concluded that relator's psychological condition had reached maximum medical improvement and assessed a seven to ten percent whole person impairment for his allowed mental condition only. Dr. Byrnes further concluded that relator's allowed psychological condition would not prevent him from returning to his former position of employment, nor would it prevent him from performing any sustained remunerative employment.
{¶ 16} 7. Relator submitted a vocational report prepared by John Ruth, M.S., C.I.R.S., dated May 18, 2001. Mr. Ruth concluded that relator would be unable to successfully seek or sustain remunerative employment now or in the future. He found relator's age placed him in the category of "closely approaching advanced age" and would dramatically limit his ability to adapt to new work situations and to do work in competition with others. Mr. Ruth also concluded that relator lacked relevant skills to transfer to a more sedentary occupation.
{¶ 17} 8. An employability assessment was prepared by Steven S. Rosenthal, M.Ed., ABVE, LCP, and dated May 8, 2001. Mr. Rosenthal found that relator's age of 61 would not be a serious factor in his ability to search for work as he retained the ability to convince employers that he could perform entry level work. Relator's ninth grade education was seen as adequate to perform most entry level work, which generally requires a seventh to ninth grade education. Relator's prior work history with his background in machine maintenance was noted to entail both hands-on ability and trouble shooting skills which would enhance his potential for success in entry level work. Mr. Rosenthal concluded that relator retained the ability to develop either academic or on-the-job training to perform entry level sedentary or light work.
{¶ 18} 9. Relator's application was heard before a staff hearing officer ("SHO") on October 23, 2001, and resulted in an order denying his application. The SHO relied upon the medical reports of Drs. Yarab, Martin and Byrnes and the vocational report of Mr. Rosenthal. The SHO discussed the nonmedical vocational factors as follows:
{¶ 19} "The Staff Hearing Officer finds that the claimant is 62 years of age. Said age is an age that is definitely a barrier to re-employment but certainly is not a bar and concludes that giving the claimant the benefit of doubt, that claimant's age is an unfavorable factor in claimant's re-employment potential.
{¶ 20} "The Staff Hearing Officer finds that the claimant's education is a positive factor. The claimant's high school equivalent education, as claimant did obtain his G.E.D. in and of itself may not necessarily provide claimant with present time skills, but is evidence of claimant's ability to learn new skills conducive to at least sedentary work at entry level positions. Furthermore, the Staff Hearing Officer finds that claimant's 8th grade education, even though claimant did receive his G.E.D. in and of itself does not indicate a lack of intellectual ability to be retrained, as claimant indicated on his IC-2 Application on file, that he is able to read, write, and do basic math.
{¶ 21} "Furthermore, the claimant's work history is also a positive factor. The claimant working his entire career as a millwright/maintenance repairmen indicates employment in an occupation predominately classified as a skilled position which required training which indicates and suggests that the claimant has the skills and qualifications to perform other occupations or at least be retrained to perform other occupations i.e. entry level sedentary/light work based upon his prior work history.
{¶ 22} "In summary, the Staff Hearing Officer concludes that claimant's non-medical disability factors on the whole favor re-employability i.e. that the education and work history factors outweigh the age factor and that the claimant can at least be retrained to perform other occupations, based upon his education and prior work history.
{¶ 23} "Therefore, based upon the limited physical restrictions as indicated by Dr. Yarab, Dr. Byrnes, and Dr. Martin whom indicate that claimant can perform sedentary work, coupled with claimant's high school equivalent education and skilled work history, the Staff Hearing Officer finds on a whole that the claimant's non-medical disability factors favor re-employability or that the claimant can at least be retrained to perform other occupations, i.e. unskilled and/or entry level work and is therefore not permanently and totally disabled and is not precluded from all sustained remunerative employment."
{¶ 24} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
{¶ 25} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
{¶ 26} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
{¶ 27} Relator essentially raises two issues in this mandamus action: (1) the objective findings made by Drs. Yarab and Martin are inconsistent with the definition of light work and are inconsistent with both the objective and subjective findings of Dr. Vargo; and (2) the SHO failed to adequately address relator's age in reaching his decision that relator could perform some sustained remunerative employment. For the reasons that follow, this magistrate disagrees.
{¶ 28} Relator first contends that there is no medical evidence to support the conclusions of Drs. Yarab and Martin that relator is capable of performing light duty work. "Light work" is defined in Ohio Adm. Code4121-3-34(B)(2)(b) as follows:
{¶ 29} "* * * `Light work' means exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible."
{¶ 30} This definition is the same definition that was used by Dr. Yarab.
{¶ 31} Contrary to relator's argument, this magistrate finds nothing in the reports of Drs. Yarab and Martin which conflicts with their opinions that relator is physically capable of performing light duty work. As stated previously, Dr. Yarab assessed a five percent impairment for relator's back condition, and a 15 percent impairment for his knee condition. Dr. Yarab specifically opined that relator was capable of performing light duty work as such as specifically defined in the Ohio Administrative Code. Nothing in his report contradicts that conclusion.
{¶ 32} Similarly, Dr. Martin assigned no impairment for relator's back condition, noted that his knee condition does prevent him from returning to his former position of employment, but that he would be capable of working in an environment in which he would not be required to kneel, squat, or climb ladders, that he should avoid lifting more than 20 pounds, and that he should avoid activities requiring prolonged periods of standing or walking. Looking at the definition of light work, Dr. Martin's conclusions do not conflict with the definition. It should be remembered that the definition of "light work," as provided in the Ohio Administrative Code, provide the upper limit of light duty work and that there are some jobs which would not require as much exertion. However, nothing in the reports of Drs. Yarab and Martin would indicate that relator is not capable of performing light duty work.
{¶ 33} Relator also contends that the reports of Drs. Yarab and Martin should not be relied upon because their objective findings differed from the findings of his treating physician, Dr. Vargo. However, the commission was not required to rely upon the findings of relator's treating physician. Instead, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. Teece, supra. It is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission. State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373. Based on the foregoing, relator's first argument is not well-taken.
{¶ 34} Relator also contends that the commission's analysis of the nonmedical disability factors was not sufficient; however, this magistrate disagrees. The commission noted that relator's age was an unfavorable factor in his ability to become reemployed; however, the commission did not find that his age was a complete bar to reemployment. Instead, the commission found that relator's education was a positive factor, that his ability to obtain his G.E.D. is evidence of his ability to learn new skills conducive to at least sedentary work at entry level positions. Further, the commission relied upon relator's statements on his application that he is able to read, write, and do basic math. The commission also viewed relator's work history as a positive factor noting that his former work was in a skilled position that required training indicative of relator's having the skills and qualifications to perform other occupations or at least to be retrained to perform other occupations at entry level or sedentary light duty work levels. The commission concluded that relator's nonmedical disability factors, when viewed on a whole, favor reemployability and that his education and work history outweigh his age factor demonstrating that he can at least be retrained to perform other occupations.
{¶ 35} As noted above, the commission went into detail regarding the nonmedical disability factors and concluded that, overall the factors favored reemployability. Nothing in relator's brief demonstrates that the commission abused its discretion in this regard. As such, this argument of relator is not well-taken.
{¶ 36} Based on the foregoing, this magistrate finds that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny his request for a writ of mandamus.